See the sky, or S-K-K-Y? Sky, Your Honor. Sky, all right. Even with two Ks, v. MindGeek and Clayboy, 2016-2018. Mr. Schutz. Thank you, Your Honor. Good morning. May it please the Court, this case should be reversed because the board erred in its purported construction of the term wireless device means. And to start the analysis, we should take a brief look at what the board actually said in its purported claim construction, which can be found in the appendix at page 13. After going through the record and deciding that wireless device means was not a means plus function term, it went on to say, quote, further, if the term were to be so construed, the corresponding structure and the specification is not limited to the multiple processor embodiment as depicted in Figure 2, no further construction is required for purposes of this decision. That's wrong. The term needs to be construed. And regardless of how you construe that term, whether it should be construed pursuant to 112.6 as we proposed, or whether you go through a construction... How can it be construed under 112.6 because there's no function? It doesn't say means for. It doesn't matter whether it's construed under 112.6 or whether it's construed under a non-112.6 argument. And that's a very important thing to keep in mind for purposes of this case because the board made no construction. But aren't things backward here? This is not... How can it be a means plus function claiming if what's claimed up front in the claim itself is a structure, not a function? Well, let's run with that. Let's take a construction that's not means plus function that just has to construe the term wireless device means. Now, I'm not going to concede that it's not means plus function. We'll get circled back to that. Wireless device. Okay, wireless device. What's a wireless device? The court... Excuse me, the board never construed the term wireless device. It needs to be construed. It can't be looked at in a vacuum. You seem to agree that wireless device is disclosed in Rolfe. There is... Well, not wireless device is properly construed, Your Honor. Because wireless device, it doesn't exist in a vacuum. That term needs to be construed in the context of the specification and the file history. And what the board did was say, in essence, we're not going to construe wireless device other than in the negative and saying it's something that doesn't have two processes. Rolfe only has one process. So, the important thing here is no matter whether you construe that term by going to path of 112.6 or if you say it's structure, wireless device, it's got to mean something and you construe it, you still get to the same result, which is a wireless device as considered in the context of this patent specification and the file history is a device that has multiple processors. So, why is that so? First of all, if you take a look at the specification and you go to column 14 in the specification, the invention here is exhibited in the... in figure 2. If you look at block 202, 203, and 204. That's the wireless device. And you get there either through 112.6 or just a standard straight up plain construction. 202, what's 202? 202 is basically a cell phone, right? And a cell phone, and this is undisputed, your basic cell phone at the time had a processor. But the reason that our inventors did what they did was you could not download this rich media to an existing cell phone and play it back. You needed additional processing capability. And so, as illustrated in the affidavit submitted during the course of prosecution history by Dr. Friedson, one of the inventors here, he came up with a prototype that is in essence reflected in the patent in this block format of 202 and 203. It's an additional processor and functionality encompassed in something that can either be part of an existing cell phone or can be an accessory unit. And the board, if you look at the board's opinion, it basically says we're going to look at the specification. Well, just look at claim one when it describes a method of wirelessly delivering. It goes on and addresses what we mean by comprising. Have compressing, storing, compressed data, transmitting. Are you saying that that can only be done by a device that has two processors? It can be. It is done by a device that is a wireless device. Right. And that term needs to be construed. And in the context of this. But just looking at that, do you need to have two processors in order to do this? Yes, because that's what the patent specifies. If you look at the specification, you look at the file history. First of all, the term wireless device does not appear in the specification. It's not a defined term in the specification. And despite what my opposing counsel may get up here and say, and that people agree on what a wireless device is, they don't. There were competing experts here. The first thing, if you do a Google search on wireless device, you're going to come up with a garage door opener. And a garage door opener is a wireless device, but that can't be the construction here. When our expert was asked about what does wireless device mean, he gave a whole long list of things, including a microwave. And today's refrigerators are wireless devices. The point is, what the court did was it did not look at the specification and the file history. And when you do that, it's clear that wireless device has some meaning. And that meaning is a multiple processor. So if we go back and we look at the back and forth file history, part of the file history that took place over many years, the examiner confronted the inventors with Roth and said, you know, Roth is a wireless device means. And Roth can do this functionality. And we said, no, no, it's not. There are differences. But the examiner would not yield. And so he suggested, all right, you need to add the term wireless device means. And it's 112.6. And that's why we took the position that it's 112.6. And then you go and find the structure in there. And if you go that path, you're going to come to wireless device means. The structure in the patent is 202 plus 203 and 204. So it's going to be standard cell phone with the additional processing capability comes with the addition of another processor. That's how you're going to get there through 112.6. But you don't, again, that path, you don't want to take that path. You can just take the path of it's got to mean something. Because it came up in prosecution. It was added. So here's the other thing to keep in mind. It was added. You're saying material was added to the spec? No. It was added to the claim. To the claim. The term wireless device means was added at the suggestion of the examiner in an examiner's amendment. And so it has to mean something. It was added to overcome Roth. So it can't be Roth. A wireless device means can't be Roth. And Roth's only one process. Unless the examiner was wrong. Well, but the examiner wasn't wrong. The examiner suggested the term. So if we go back to just basic blocking and tackling, the term is in there, needs to be construed. It's got to mean something. And it's got to mean something through the eyes of one of ordinary skill in the art who's going to look at the spec and the file history. And the board never did that. The board never really went through that analysis. Because if you go through that analysis, and you just start with an objective view of, okay, what are we talking about here? You're led to figure two, and you see 202. That's a conventional cell phone. And then it's got an addition. It's got 203 and 204. And that's a board that has an additional chip with the functionality required to implement this method. That's in there. And then layered on top of that is the affidavit of Dr. Friedson. And Dr. Friedson talks about what he did to develop his prototype. He, in essence, and I'm paraphrasing here, and you've probably read it, but he basically said there was no existing technology out there I could use to download what he called rich media files that needed compressing and shrinking and optimization and normalization. There was nothing out there that could do that. So I had to come up with, he called it an engineering solution. And what he ended up doing was coming up with additional processing power in the form of an additional prototype board. And the prototype, in essence, hooked up to a regular cell phone. And then they were able to implement the method that's set forth in the claim here. And that's clearly part of the record. And it's clearly part of what the examiner considered in allowing the claims. Because in the notice of allowance, the examiner refers to the figure 2 in the patent, refers to the specification, refers to Dr. Friedson, affidavit. So I think the only conclusion that you can possibly reach is that wireless device means it has to have some context to it. It's not out there floating in the ether by itself with no definition. It's not a garage door opener. It's not a Wi-Fi router. And it's not a standard existing at the time cell phone. Because the record that discussed what that existing was is reflected in 202. And it wasn't enough. So there had to be more. So it can't be Ralph. It just simply can't be Ralph because of the amendment here. And so the board basically only did half a job. And one of the opinions that the board relies on when it talks about the amendment at the patent office, because the board says, we're not bound by any amendments or file history estoppel. And then they cite the Tempo Lighting v. Tivoli case. And interestingly, the paragraph they cite, which is also cited by Manwin here, states that, quote, the court also observes that the PTO is under no obligation to accept the claim construction proffered as prosecution history disclaimer, which generally only binds the patent owner. And that's the end of the quote that's both in the board decision and the opposing briefs. However, if you actually go and you take a look, and this is the clear red flag. That was a quote taken from Tempo Lighting Inc. Pardon me? What you just read was a quote. I mean, I know the board used it, but it's a quote from our case in Tempo Lighting. Yes, that's what I'm saying. OK. Yeah, so what I'm saying is the board and our opponents here cited that case for the basic proposition that it doesn't matter whether you amended your claim, Skye, at the patent office, to overcome the prior art and thus limited to something that's not rough. It doesn't matter because we're not bound by what the board did. And they cite the Tempo Lighting case, which I just cited the first sentence from, which they cite. But it goes on. This is what's important here. The court, the Federal Circuit, goes on to state, however, in this instance, the PTO itself requested Tivoli rewrite the non-photoluminescent limitation in positive terms, which it did. And that is actually the construction that was adopted here. And it's exactly what we did here. The PTO said, you have to add something to this claim. You have to add wireless device means. And therefore, it's 112.6. And there's all this structure. And the board and the examiner notice of allowance pointed to 202 and 203 and some other parts of the specification and Dr. Friedson's affidavit and said, you do that, you get your patent because it overcomes. Mr. Schutz, you want to save some rebuttal time? I do, Your Honor. Thank you. We will save it for you. Mr. Gasparro? Gasparro?  Good morning, Your Honors. May it please the court. I would like to frame the dispute that was before the board. The dispute for Claim 1 was whether wireless device means is governed by 112.6 and whether the term wireless device means should be limited to structure having multiple processors regardless of whether the term is governed by 112.6 or not. For Claim 1, Skye never disputed what petitioners said Rolfe teaches other than wireless device means. Skye never disputed what petitioners said the MP3 guide teaches. Skye never disputed what petitioners said was the reason for combining Rolfe with the MP3 guide. The board resolved the party's dispute by deciding that the term was not governed by 112.6, and I'm happy to get into why we think that's correct. You didn't when you started. You are correct, Your Honor. In our petition, we proposed a means plus function construction, and we misapplied the law, as did the examiner and as did the applicants. The board got it right. It's not means plus function. The other dispute that the board resolved was that the structure should not be limited. There's no basis to limit it to multiple processors under either construction. The multiple processor argument is the only argument that Skye presents for both of its proposed constructions, including its 29-word non-means plus function proposed construction for a three-word term to distinguish Rolfe. Once the board decided that wireless device means should not be governed by 112.6, it should not be limited to multiple processors, Skye was left with no argument as to why Rolfe does not teach wireless device means. I think it's very clear, based on the questions from Your Honors, or the reactions from Your Honors, I don't think there's any question here. 112.6 doesn't apply. There's no function explicitly recited. There is structure. The structure is wireless device. I would like to address a few things that Skye's counsel mentioned. Well, he didn't mention. I don't recall him mentioning it. I was looking for it. But the board, do you think the board addresses his motion to strike in its final written decision? But sub silentio. Motion to strike regarding the new claim construction position? Your theories in the reply brief. They claim that you improperly raised new theories and arguments in your reply brief and moved to strike it. I'm sure you'll recall that. I do. And the board doesn't mention it, per se. Skye's position was that petitioners raised two new arguments in its reply brief. One, regarding claim 18 and relying on Rolfe as opposed to the MP3 guide. And the second was how, in our reply brief, there was this new theory by petitioners on claim construction. The board heard Skye out on that. They authorized the filing. Skye filed. We responded. And I think the board, they realized these were not new arguments. These were under the recent case from this court, the SAS case, petitioners had a right to respond to this new construction by the board. And we did that in our reply. And Skye actually had two opportunities. It had the response, and it also got the right to file a five-page cert reply on that very topic. So I think the board realized there were no new arguments here. This was rebuttal. There were no new arguments. The petition relies on the MP3 guide for claim 18. It does not rely on Rolfe. Our reference to Rolfe was to misstatements about Rolfe in their response. Skye's counsel mentions that the term wireless device is not in the spec. It actually is, Your Honors. It's at the very, very beginning of the patent in the technical description. You can look to its appendix 44, and it's right there in column 1, line 17 to 19. There's there the patent, the 875 patent refers to. What line did you say? It's column 1, line 17 to 19 is the technical description. And there's a reference to working off a memory for wireless or non-wireless devices. That certainly isn't a descriptive term, a definitional term. I just wanted to correct, Your Honor, that wireless device does appear in the spec. The other thing I'd like to address, I think, is a really important point here. Skye's counsel says that the board did not consider the file history. It absolutely considered the file history, and I can give you a site for where that is. The file history is impregnated with a misapplication of 112.6. And when you look at the section of the file history that Skye relies on, as did the examiner, it's not restricted to multiple processors. You've got a chip embodiment. You've got a software embodiment. I have to admit, this case is in a somewhat unusual posture. In what way, Your Honor? That both parties came in agreeing to a position which the board took as not accurate. I agree. The board got it right. We, in our papers, did not. You look at our petition. We never, ever argue that a function is explicitly recited. We implied a function into the claim, which is contrary to law. We can't rewrite the statute. The examiner can't rewrite the statute. Applicants can't rewrite the statute, and certainly Skye can't rewrite the statute. Skye had an opportunity here. Right after this IPR was instituted, we had our initial conference call with the board, and Skye indicated that it may seek a motion to amend the claims. It never did that. It could have filed a motion to amend after knowing that the board said this wasn't means plus function. They could have tried to fix the claims. I didn't see that. It's in the record, Your Honor. So, let's see. So, if you look at Appendix 5635, that's where Skye represents that they may seek. That was in the order from the board. 5635, where Skye indicates it may seek leave to amend the claims. It never did. And just lastly, unless Your Honors have any questions, you know, yes, the board relied on temporal lighting. Temporal lighting was not a means plus function case. Here the board relied on the file history, consulted the file history. I do have a question for you. Hypothetically, if we disagree with you on claim construction, do we have to remand for additional fact-finding? I don't think so, Your Honor. I think we've got substantial evidence in the record. I mean, Rolfe is replete with teaching wireless devices. I mean, that's exactly the argument that we made in our petition. We never had to change. Although we changed course on claim construction, we never had to change course on what Rolfe teaches. We always said from the beginning, Rolfe teaches a cell phone, teaches other wireless devices. It has it. Listen, they may have intended to get over Rolfe, but they did it the wrong way. They're just wrong as a matter of law, Your Honor. On the question of multiple processes, does column 5, line 66, is that relevant? Column 5. Line 66. Asserted in the patent, 875. Yes, right. Talks about a processor. Does that mean the spec is not limited to multiple processes? That's exactly right, Your Honor. That is actually, that paragraph is a description of the software embodiment, which the applicants taught was not a multiple processor embodiment. So that is similar to what's in column 14 that the examiner was relying on. If there's no other further questions, Your Honor, we believe the case should be affirmed. Thank you, Mr. Spero. Mr. Schuch has two and a half minutes. First of all, with regard to the software embodiment we just talked about and briefed a little bit, there is no reliance on any software embodiment by the examiner in either proposing the amendment to the claims or if you take any kind of reasonable objective look at the notice of allowance, because the notice of allowance doesn't talk about software. It talks about 202, 203, and 204. It talks about figure two. There's no software embodiment in that. There is a passing reference in, I think, one sentence out of an entire column that basically spends the rest of the time talking about hardware. So that's, in essence, a red herring. It doesn't come. On the 112.6 piece, interestingly, you only get to the software if you do 112.6, and then even arguably you don't. You come back to balking and tackling basics. The claim has to be construed. Wireless device must mean something, and it can't simply mean this generic defined in the negative. It can be anything as long as it doesn't have multiple processors, because we overcame ROLF. It's just not ROLF. If you go back to the petition, when they say there's no dispute about ROLF, there's no dispute as long as we're all in agreement that it has only a single processor, because when they were going down the 112 route when they started, they found they had a different spin on what structure is incorporated into the 112 analysis than we did. Our structure that was incorporated required two processors, and thus ROLF doesn't make the claim obvious. Their going down the structure, of course, was okay with one processor, and that wasn't the situation with us. So with that, Your Honors, thank you very much. Thank you, counsel. We'll take the case under advisement.